1

2

3

4

5

6

**IN THE UNITED STATES DISTRICT COURT FOR THE**

7

**EASTERN DISTRICT OF CALIFORNIA**

8

9

10  ZUCKERMAN FAMILY FARMS, INC., a        1:14-cv-01529-AWI-BAM
    California corporation; and BELLA

11  BRANDS, LLC, a California limited        **ORDER DENYING PLAINTIFFS'**
    liability company,                       **MOTION FOR PRELIMINARY**
12                                           **INJUNCTION AND GRANTING**
                                             **DEFENDANT'S MOTION TO**
13          Plaintiffs,                      **DISMISS**

14          v.                               **(Docs. 4, 8)**

15  BIDART BROS., a California corporation,
    and DOES 1 through 20, inclusive,
16

17          Defendants.

18  _____/

19

20

21                              **I. INTRODUCTION**

22      Plaintiffs, Zuckerman Family Farms and Bella Brands, LLC (collectively "Plaintiffs"),

23  have filed suit against Bidart Bros. ("Defendant") for violation of the Plant Variety Protection

24  Act ("PVPA"), the Lanham Act, and California Business Practices Code section 17200 et seq..

25  Plaintiff alleges that Defendant imported, planted, and propagated Sifra, a variety of potato

26  protected under PVPA, without authorization. (Jochimsen Decl. at ¶ 6.) Plaintiff now seeks a

27  preliminary injunction enjoining Defendant from propagating and/or selling any Sifra seed or

28

1

1  fresh potatoes. For the following reasons, Plaintiffs' motion for preliminary injunction will be

2  denied and Defendant's motion to dismiss will be granted.

3  **II. FACTUAL BACKGROUND**

4        On February 8, 2008, HZPC Holland B.V., a Netherlands limited company ("HZPC"),

5  obtained registration in the Netherlands for a new potato variety that is now known as Sifra.

6  Complaint ("Compl.") at ¶ 13. On April 3 of the same year, HZPC applied to the United States

7  Department of Agriculture ("USDA") for plant variety protection for Sifra. Id. at ¶ 13. On July

8  16, 2012 HZPC was issued a PVPA certificate for Sifra. Id. at ¶ 16; Exh. B.

9        On June 22, 2011, HZPC Americas Corp., the North American subsidiary of HZPC,

10  entered into a Sifra production agreement with Zuckerman Family Farms, Inc. ("Zuckerman")

11  that provides, inter alia:

12  

13      [Until December 31, 2016, Zuckerman] is authorized to certify [Sifra] seed
    potatoes … for its own use and shall have the Priority Right for marketing and
    sales of seed potatoes[1] of the [v]ariety in the States of California, Oregon, and

14      Washington. Priority right is defined as the right of [Zuckerman] to first right of
    refusal to use or market seed of the [v]ariety in California, Oregon, and

15      Washington….

16      …
    In January of each year the parties shall meet and/or exchange information which

17      shall accurately set forth the amount of seed potatoes of the [v]ariety sold to or
    through [Zuckerman] as well as the amount of seed potatoes of the [v]ariety sold

18      by HZPC to other purchasers in California, Oregon, and Washington….

19  Exhibit A to Compl. ("Sifra Production Agreement" or "Agreement") at §§ E, H.

20  

21        Defendant is alleged to have received Sifra potatoes from a source other than Zuckerman

22  or HZPC and without the authorization of either. Compl. at ¶ 26. Plaintiffs allege that Defendant

23  is now "marketing, conditioning, offering for sale, exposing for sale, stocking the variety for

24  sale, exporting from the United States and selling Sifra potatoes without the required PVPA

25  notice." Id. at ¶ 26. As a result of Defendant's unauthorized sale of Sifra (below the price offered

26  by Plaintiffs), Plaintiffs allege that they have been substantially impacted in the sale of as many

27  

28  [1] The Sifra Production Agreement draws a distinction between "seed" and "table" stock. The former are used for
propagation; the latter are used for table consumption.

1  as 280,000 fifty-pound units of their Bella Blanca brand potatoes. Id. at ¶ 28.

2

3  **III. PRELIMINARY INJUNCTION**

4  **A.  Standard for Issuance of Preliminary Injunction**

5  Federal Rule of Civil Procedure 65(a) governs requests for preliminary injunctions.  "A

6  plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

7  that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

8  equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural

9  Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary injunction is an

10 extraordinary remedy never awarded as of right.  In each case, courts 'must balance the

11 competing claims of injury and must consider the effect on each party of the granting or

12 withholding of the requested relief.'  'In exercising their sound discretion, courts of equity

13 should pay particular regard for the public consequences in employing the extraordinary remedy

14 of injunction.'"  Winter, 555 U.S. at 24 (internal citations omitted); see Lopez v. Brewer, 680

15 F.3d 1068, 1072 (9th Cir.2012) (A preliminary injunction is a "drastic remedy that should not be

16 granted unless the movant, by a clear showing, carries the burden of persuasion.").  The Ninth

17 Circuit has adopted a sliding scale approach to preliminary injunctions in which an injunction

18 may issue "where the likelihood of success is such that 'serious questions going to the merits

19 were raised and the balance of hardships tips sharply in [plaintiffs] favor.'"  Alliance for the Wild

20 Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing Clear Channel Outdoor, Inc. v.

21 City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2000)).

22 **B.  Likelihood of Success on the Merits**

23 Plaintiffs have pled three causes of action; each could independently serve as the basis for

24 a preliminary injunction. Each is analyzed separately below.

25 **1.  First and Second Causes of Action: Violation of the PVPA and Request for**

26 **Injunctive Relief**

27 Plaintiff's PVPA claim alleges that Defendant is marketing Sifra potatoes, a protected

28 variety, without the required PVPA notice and without the authority of Plaintiffs or HZPC.

1  Compl. at ¶ 26. Defendant argues that Plaintiff has no standing to enforce the PVPA against it.

2  See Doc. 9 at p. 10-13.[2]  Specifically, Defendant contends that HZPC, as the owner of the PVPA

3  certificate must bring suit. See Id. It is well settled "that before a federal court can consider the

4  merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish

5  the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990).

6        A plaintiff bringing an infringement claim must meet both constitutional and prudential

7  standing requirements. The constitutional component of standing arises from the "case-or-

8  controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

9  (1992). In this context, Article III standing is satisfied by an ownership interest in the PVPA

10  certificate or exclusionary rights granted therefrom such that defendant's conduct has caused

11  plaintiff an injury in fact that a favorable judgment will redress. See WiAV Solutions LLC v.

12  Motorola, Inc., 631 F.3d 1257, 1265 (Fed. Cir. 2010); Morrow v. Microsoft Corp., 499 F.3d

13  1332, 1339 (Fed. Cir. 2007). Prudential standing, although similar to Article III standing, is born

14  of "judicially self-imposed limits on exercise of federal jurisdiction" and generally prohibits "a

15  litigant's raising another person's legal rights." Elk Grove Unified School Dist. v. Newdow, 542

16  U.S. 1, 11-12 (2004).

17        A Plaintiff has the burden "clearly to allege facts demonstrating it is a proper party to

18  invoke judicial resolution of the dispute." U.S. v. Hays, 515 U.S. 737, 743 (1995). The standing

19  inquiry "often turns on the nature and source of the claim asserted.... Essentially, the standing

20  question in such cases is whether the constitutional or statutory provision on which the claim

21  rests properly can be understood as granting persons in the plaintiff's position a right to judicial

22  relief." Warth v. Seldin, 422 U.S. 490, 500 (1975). Because the PVPA creates the right to sue

23  others for infringement of the rights of the owner of a plant variety, it also defines the nature and

24  source of the infringement claim and determines the party authorized to bring suit.

25

26  [2] Federal Circuit law applies to the PVPA, substantive patent law, and procedural issues unique to patent law. Baden
Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300, 1304 (Fed. Cir. 2009) (citing Syngenta Seeds, Inc. v. Delta Cotton
27  Coop., Inc., 457 F.3d 1269, 1273 (Fed. Cir. 2006) (specifically addressing PVPA)); Delta and Pine Land Co. v.
Sinkers Corp., 177 F.3d 1343 (Fed. Cir. 1999); see AGSouth Genetics, LLC v. Georgia Farm Services, LLC, ---
28  F.Supp.2d. ----, 2014 WL 2112364, *4 (M.D. Ga. 2014) (applying Federal Circuit law to PVPA claim). This Court
has identified no conflicts between Ninth Circuit law and Federal Circuit law as they apply to this case.

1    The PVPA provides "patent-like protection to novel varieties of sexually reproduced

2  plants (that is, plants grown from seed), which parallels the protection afforded asexually

3  reproduced plant varieties (that is, varieties reproduced by propagation or grafting) under … the

4  Patent Act." Asgrow Seed Co. v. Winterboer, 513 U.S. 179 (1995). The PVPA is regularly

5  discussed in terms of patent law and the Federal Circuit applies patent law to fill in the gaps in

6  PVPA jurisprudence. See, e.g., Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc., 457 F.3d 1269,

7  1276 (Fed. Cir. 2006). Under the PVPA, "[a]n owner shall have remedy by civil action for

8  infringement of plant variety protection under section 2541…." 7 U.S.C. § 2561. Similarly,

9  section 2541 provides that it is "infringement of the right of the owner of a protected variety to"

10  sell, market or expose to sale, deliver, ship, consign, exchange, solicit an offer to buy or

11  otherwise transfer possession, import into or export from the United States, sexually multiply, or

12  propagate that protected variety without authority in the United States or in commerce regulable

13  by Congress. See 7 U.S.C. § 2541(a)(1-3). The requirement that the owner of a protected variety

14  be the party to seek redress an infringement under the PVPA is consistent with the most direct

15  analog to the PVPA – the Patent Act. Under the Patent Act, "[a] patentee [has a] a remedy by

16  civil action for infringement of his patent." 35 U.S.C. § 281.

17    Under both the Patent Act and PVPA the owner of the patent or certificate has the right to

18  license, grant, or convey an exclusive right to use the patented object in the whole or any

19  specified part of the United States. See 7 U.S.C. 2531(b); 35 U.S.C. 261.  A party is a patentee or

20  certificate owner for purposes of bringing an infringement suit "if it holds legal title to the patent

21  [or certificate], either by issuance or assignment." Azure Networks, LLC v. CSR PLC, --- F.3d --

22  --, 2014 WL 5741337, *3 (Fed. Cir. 2014) (citations omitted). A grant of exclusive license may

23  be tantamount to an assignment if all substantial rights are transferred to the licensee. Id. at *4;

24  A123 Sys., Inc. v. Hydro–Quebec, 626 F.3d 1213, 1218 (Fed.Cir.2010) (citations omitted);

25  Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 876 (Fed. Cir.

26  1991) (finding agreement amounted to an assignment, even though entitled "exclusive license,"

27  because it transferred substantial rights to licensee).

28

1    The Federal Circuit has recognized three categories of plaintiffs in analyzing

2  constitutional standing in a patent infringement context: those that can sue in their own name

3  alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot

4  even participate as a party to an infringement suit. Morrow v. Microsoft Corp., 499 F.3d at 1339.

5  The first category consists of plaintiffs that hold all legal rights to the patent such as the patentee

6  or assignee of exclusionary rights and all or substantially all patent rights. Id. at 1340.  A plaintiff

7  in the first category has constitutional and prudential standing to sue for infringement in its own

8  name. Id. at 1340 (citing Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc., 248

9  F.3d 1333, 1345 (Fed. Cir. 2001)).

10    The second category consists of plaintiffs that "hold exclusionary rights and interests

11  created by the patent statutes, but not all substantial rights to the patent." Morrow at 1340. A

12  plaintiff in the second category would suffer an injury that grants constitutional standing when

13  the exclusionary rights are violated. However, the second category of plaintiff would lack

14  prudential standing to bring the suit on his own; his exclusionary rights must be enforced in the

15  name of the patent owner, and must join the patentee for the purpose of avoiding duplicative

16  litigation. Id. at 1340.

17    The third category of plaintiffs lacks exclusionary rights and therefore necessarily does

18  not possess substantial rights in the patent. Morrow, 499 F.3d at 1340-41. Because the third class

19  of plaintiffs does not possess exclusionary rights it is not injured by a party that makes, uses, or

20  sells the patented invention. Accordingly, the third category of plaintiffs lack constitutional

21  standing. Id.

22    In order to qualify as an exclusive licensee for purposes of constitutional standing, "a

23  party must have received, not only the right to practice the invention within a given territory, but

24  also the patentee's express or implied promise that others shall be excluded from practicing the

25  invention within that territory as well." Spine Solutions, Inc. v. Medtronic Sofamor Danek USA,

26  Inc., 620 F.3d 1305, 1317 (Fed. Cir. 2010) (citation omitted). A licensee need not hold all

27  exclusionary rights granted under a patent or certificate to be considered an exclusive licensee.

28  Id. at 1266. A licensee is an "exclusive licensee of a patent if it holds *any* of the exclusionary

1  rights that accompany the patent." Id. at 1266 (emphasis added). However, "an exclusive

2  licensee derives its standing from the exclusionary rights it holds," therefore its standing is

3  "coterminous with those rights." Id. At 1266. Accordingly, an exclusive licensee has

4  constitutional standing if it can exclude the particular defendant from the specific protected use

5  granted by the patent or certificate that was allegedly infringed upon. See WiAV Solutions, 631

6  F.3d at 1267 (For constitutional standing a plaintiff must show "that is has the right under the

7  patents to exclude *the Defendants* from engaging in the alleged infringing activity and therefore

8  is injured by Defendants' conduct.")(emphasis original).

9       As to exclusionary rights, Plaintiffs allege that the Agreement gave Zuckerman "the

10 exclusive right to use and market Sifra seed potatoes in California, Oregon[,] and Washington."

11 Compl. at ¶ 14. The Agreement is not so explicit. Rather, the Agreement authorizes Zuckerman

12 to "certify [Sifra] seed potatoes … for its own use" and gives it the "Priority Right for marketing

13 and sales of [Sifra] seed potatoes … in California, Oregon, and Washington." Sifra Production

14 Agreement at § E. The agreement defines "Priority Right … as the right of [Zuckerman] to first

15 right of refusal to use or market [Sifra] seed in California, Oregon, and Washington." Id. at § E.[3]

16 HZPC agreed not to appoint other marketing agents in California, Oregon, or Washington but

17 retained its own ability to sell seed potatoes in California, Oregon, and Washington.[4] See Id. at §

18 H ("the parties shall meet and/or exchange information … set[ting] forth the amount of [Sifra]

19 seed potatoes … sold by HZPC to other purchasers in California, Oregon and Washington.").

20      The Sifra Production Agreement gives Zuckerman the exclusive right to market (and to

21 propagate for the purpose of marketing for non-table use) Sifra to other growers in the territory

22 to the exclusion of all but HZPC. That right is an exclusionary right granted under the PVPA.

23 See 7 U.S.C. § 2541(a)(3) (It is infringement to "propagate … the variety as a step in marketing

24

---

25 [3] HZPC also granted Zuckerman "the nonexclusive right to market" elsewhere in the United States and Latin
   America, tending to indicate that the California, Oregon, and Washington marketing agreement was designed to be
26 exclusive.
   [4]Despite HZPC's retention of the right to sell seed potatoes in California, Oregon, and Washington, exclusivity for
27 purposes of standing does not require the license to be exclusive as to the licensor, but rather that the licensor has
   promised not to grant additional rights to third parties. See Amgen, Inc. v. Chugai Pharmaceutical Co. Ltd., 808
28 F.Supp. 894, 900 (D.Mass. 1992) aff'd, 52 F.3d 1026 (Fed. Cir. 1995); Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d
   1538, 1552 (Fed.Cir. 1995).

1   (for growing purposes)" without authority.) However, Plaintiffs do not allege that Defendant has

2   propagated Sifra as a step in marketing for growing purposes. See Compl. at ¶ 26 ("Bidart is

3   marketing, conditioning, offering for sale, exposing for sale, stocking the variety for sale,

4   exporting from the United States and selling Sifra potatoes" without authority.); Doc. 4-1 at 5-6.

5   Accordingly, that exclusive right does not provide Plaintiffs constitutional standing because it is

6   not alleged to have been infringed upon.[5]

7          Zuckerman holds the right to sell Sifra to buyers within California, Oregon, and

8   Washington with the condition that if Zuckerman declines to do so that HZPC may sell Sifra to

9   buyers in the same area. [6] As Plaintiff notes, "HZPC must pay royalties to Zuckerman if (after

10  Zuckerman has declined to do so) HZPC makes any sale of Sifra within the Exclusive Territory."

11  Doc. 10 at 2. Accordingly, Zuckerman and HZPC both have inclusive rights, i.e., the right to

12  authorize other producers to sell Sifra for table use. See Compl. at ¶ 30 ("Neither of the Plaintiffs

13  nor HZPC have granted permission to Bidart to propagate, develop, market or sell Sifra

14  potatoes."). However, neither – standing alone – has the right to exclude others from table

15  production of Sifra within California, Oregon, and Washington; Zuckerman may sell Sifra for

16  production purposes without further consent by HZPC and if Zuckerman declines to exercise its

17  right of first refusal to sell Sifra seed, HZPC may sell Sifra seed to growers within California,

18  Oregon, and Washington. Zuckerman has no authority to prevent others from growing of Sifra

19  for table use (among other protected uses) if authorized by HZPC. In order to exclude a potential

20  grower from growing or selling Sifra for table use in the territory, first Zuckerman, then HZPC

21  must refuse permission. Accordingly, Zuckerman and HZPC are best described as co-exclusive

22  holders of the rights granted by the PVPA certificate for Sifra because –as a result of

23  Zuckerman's right of first refusal – neither entity can exclude a third party from selling,

24

25  _____

26  [5] A claim under this exclusive right may have been actionable had Zuckerman alleged a claim against a third party that sold Sifra seed in California, Oregon, or Washington to Bidart for propagation or if Bidart was alleged to have propagated Sifra seed for marketing to a third party for purposes of growing. Neither allegation is before this Court.

27  [6] It is of note that HZPC was the entity that sent Defendant a cease and desist letter informing Defendant that "HZPC is the owner of the variety and … to sell … [Sifra] was an infringement of HZPC's plant breeder's rights."

28  Declaration of Fred Koops, Doc. 4-3 at ¶ 15. Although not dispositive, that letter is indicative of HZPC's belief that it had not granted Plaintiffs property rights in the PVPA certificate.

1   marketing, importing, etc., Sifra without the other.[7] Zuckerman, standing alone, does not have

2   constitutional standing to bring its first cause of action.

3       Accordingly, Plaintiffs are not likely to succeed on the merits of their first claim.

4       **2.   Third Cause of Action: Violation of the Lanham Act**

5       Plaintiff next asserts a claim for unfair competition under Lanham Act § 43(a), 15 U.S.C.

6   § 1125(a), and requests injunctive relief pursuant to 15 U.S.C. § 1116. The Supreme Court

7   recently noted that Section 43(a) of the Lanham Act "creates two distinct bases of liability: false

8   association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Intern., Inc. v.

9   Static Control Components, Inc., --- U.S. ---, 134 S.Ct. 1377, 1384 (2014) (citing Waits v. Frito–

10  Lay, Inc., 978 F.2d 1093, 1108 (9th Cir. 1992), and abrogating it on other grounds). The Waits

11  Court noted that Section 43(a) creates liability for "(1) false representations concerning the

12  origin, association, or endorsement of goods or services through the wrongful use of another's

13  distinctive mark, name, trade dress, or other device ('false association'), and (2) false

14  representations in advertising concerning the qualities of goods or services ('false advertising')."

15  978 F.2d at 1108 (citations omitted); see also 4 J. Thomas McCarthy, McCarthy on Trademarks

16  and Unfair Competition § 27:10, at 27-19 to 27-20 (4th ed.1998) (Section 1125(a)(1) is divided

17  into two subsections: subsection A "relates to use of the statute as a vehicle for federal court

18  assertion of unregistered trademark, trade name and trade dress infringement claims;" subsection

19  B "relates to use of the statute as a vehicle for assertion in federal court of false advertising (as

20  well as trade libel) claims.").

21      It is not clear from the Complaint or motion for preliminary injunction whether Plaintiffs

22  seek to allege a "false association" claim under § 43(a)(1)(A) or a "false advertising" claim

23  under § 43(a)(1)(B). In Plaintiffs' complaint they allege that "any sale of Sifra …within

24  [California, Oregon, or Washington] carries with it the implied representation that the Sifra

25  potatoes came from Plaintiffs…." "[S]ales by Bidart of Sifra are likely to cause confusion, to

26

27  ---
    [7] HZPC has claimed the right to exclude others from selling the variety but has noted that "HZPC … allows Zuckerman … to produce, market, sell, buy, deliver and import the potato variety Sifra in California." Doc. 4-3 at 23. Based on the Sifra Production Agreement, HZPC appears to be incorrect. The conflict between HZPC and Zuckerman as to which entity holds exclusive rights highlights the need for both parties to be named plaintiffs to the infringement action.

28

1 cause mistake, or to deceive consumers as to the affiliation between Plaintiffs and Bidard or as to

2 the origin, sponsorship or approval [of] Bidart's sale of Sifra potatoes." Compl. at ¶¶ 42-43. The

3 "cause confusion, or to cause mistake, or to deceive consumers as to the affiliation" language in

4 the Complaint mirrors the false association claim created by § 43(a)(1)(A). See 15 U.S.C. §

5 1125(a)(1)(A).  However, in their motion for preliminary injunction Plaintiffs allege that

6 Defendant, by "marketing the Sifra variety without representing its true nature and that it is

7 subject to protection under the PVPA," has caused and continues to cause harm to Plaintiffs'

8 Bella Blanca® brand and to the reputation of the variety. Doc. 4-1 at 6; see Doc. 10 at 4.

9 Plaintiffs' motion for preliminary injunction further contends that Defendant's marketing without

10 designation of the potatoes as Sifra "misrepresent[ed] the nature, source, and characteristics of

11 the product." Doc. 10 at 4.[8] This claim appears to allege a false advertising claim because its

12 language mirrors § 43(a)(1)(B). See 1125(a)(1)(B).

13         This Court will consider whether either of Plaintiffs' contentions – (1) that because

14 Defendant sold Sifra and Plaintiff was the sole producer that Defendants sought to convey an

15 implication of approval by Plaintiffs of Defendant's production that caused consumers to

16 perceive an affiliation between Plaintiffs and Defendant to the detriment of Plaintiff's brand (due

17 to allegedly lesser quality production by Defendant), or (2) that Defendant's failure to disclose

18 that it was selling Sifra constituted false advertising in violation of the Lanham Act to the

19 detriment of Plaintiff's brand (presumably because the uniqueness of the brand in the territory

20 was destroyed) – would be likely to succeed on the merits.

21             **a.  False Association**

22         A false association claim is available where defendants' conduct has allegedly created "a

23 likelihood of confusion as to whether plaintiffs were endorsing [defendant's] product." Wendt v.

24 Host Int'l, Inc., 125 F.3d 806, 812 (9th Cir. 1997). Plaintiff's false association claim is predicated

25 on an assumption that Plaintiffs are (and have the right to be) exclusive producers of Sifra in the

26

---

27 [8] In responding to Defendant's motion to dismiss, Plaintiffs note that their claim is not a trademark claim as though
that distinction defeats Defendant's argument. See Doc. 10 at 4. Plaintiffs distinction provides limited guidance to
28 the Court in evaluating their claim because Plaintiffs appear to allege violations of the false association and false
advertising provisions of § 43(a)(1), either of which can be entirely independent of trademark law.

10

1  territory. See Compl. at ¶ 42 (any sale of Sifra carries the implied representation that the potatoes

2  come from Plaintiffs…). As explained supra, Plaintiffs have not shown that they possess the

3  exclusive right to sell Sifra for table use.

4        Further, Plaintiffs do not explain how "sales by Bidart of Sifra are likely to cause

5  confusion … or to deceive consumers as to the affiliation between" Defendant and Plaintiffs

6  considering Bidart is not alleged to have used any word, term, name, symbol, or device or any

7  combination thereof, attributable to Plaintiffs. The Court must assume that Plaintiffs seek to

8  imply that the Sifra potatoes are distinctive enough to be recognizable from other white, round

9  potatoes such that Plaintiffs could allege a trade dress claim. Assuming, *arguendo*, that such a

10  claim is actionable, Plaintiffs have pled no facts and submitted no evidence to suggest that Sifra

11  is so visually distinguishable from other potatoes (and that the visual distinctness is non-

12  functional) that a trade dress claim would be viable in this case. See Disc Golf Ass'n v.

13  Champion Discs, Inc., 158 F.3d 1002, 1006 (9th Cir. 1998); see also TrafFix Devices, Inc. v.

14  Mktg. Displays, Inc., 532 U.S. 23, 33 (2001) (Trade dress is functional if it is essential to the use

15  or purpose of the article or if it affects the cost or quality.)

16        Plaintiffs appear to have attempted force an infringement claim into the framework of a

17  false association claim. "This is evident from the relief sought, i.e. to enjoin Defendant's sale of

18  the Sifra variety without authorization." Doc. 10 at 4; see Compl. at ¶ "61".[9] That remedy is

19  consistent with a claim for patent infringement, not false association. The facts of this action do

20  not support a claim for false association.

21        **b.  False Advertising**

22        The five elements of a false advertising claim under Section 43(a) of the Lanham Act are:

23        (1) a false statement of fact by the defendant in a commercial advertisement about
24        its own or another's product;

25        (2) the statement actually deceived or has the tendency to deceive a substantial
        segment of its audience;
26

27

28
_____
[9] Paragraph 61 of the Complaint falls between paragraphs 44 and 45.

11

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1110 (9th Cir.2012). The thrust of Plaintiffs' false advertisement claim is that Plaintiffs to have the right to exclude others from the production and sale of Sifra in the territory and that by Defendant selling Sifra potatoes under any name other than "Sifra" or Plantiffs' "Bella Blanca" mark Defendant has deprived Plaintiffs of their right to advertise exclusivity of production and command a premium. This theory is intimately tied to Plaintiffs' PVPA claim; it requires Plaintiffs' ability to exclude third parties from production of Sifra. Plaintiffs' right to exclude others has not been established.

Even if Plaintiffs could establish a right to exclude others from production the facts presented to not lend themselves to a false advertising claim. The substance of Plaintiffs' claim alleges that Defendant's failure to disclose that the potatoes that it sold were Sifra stock was "false and misleading." In order to establish that an advertisement is false or misleading under the Lanham Act, a plaintiff must show that the statements were either literally false or implicitly conveyed a false impression. Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave., 284 F.3d 302 (1st Cir. 2002), cert. denied, 123 S.Ct. 485 (U.S. 2002). Defendant contended (and Plaintiff has not disputed) that it advertised the potatoes that it sold as "white, round potatoes." Doc. 9 at 14. That description is literally true and Plaintiff has not explained how that description conveys any false impression regarding the potatoes origin[10], sponsorship, or approval.  Plaintiffs have cited to (and the Courts own research has yielded) no authority to suggest that a grower or

---

[10] Plaintiffs' allegations cannot support a claim for false impression regarding origin of the potatoes that Defendant is alleged to have grown. The "origin of goods" language in § 43(a)(1)(A) "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Dastar Corp. v. Twentieth Century Fox, Film. Corp., 539 U.S. 23, 37 (2003). Plaintiffs allege that Defendant actually grows the Sifra potatoes that it sells. Defendant failing to disclose in its advertising that HZPC has an interest in the PVPA certificate is not a misrepresentation of origin protectable under the Lanham Act. If Defendant grew the potatoes for sale and represented them as such then it has not misrepresented their origin.

1  seller must use in its advertisement the specific varietal that it grows or that a failure to do so is

2  false or misleading.[11]

3      Plaintiffs' Lanham Act claims are unlikely to succeed on the merits.

4      **3.   Fourth Cause of Action: Unfair Competition**

5      Plaintiffs have alleged that Defendant engaged in conduct that constitutes unlawful,

6  unfair, and/or fraudulent business practices in violation of California Business & Processions

7  Code Section 17200. Compl. at ¶¶45-48.

8      California's unfair competition law ("UCL") prohibits businesses from engaging in "any

9  unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

10  advertising." Cal. Bus. Prof.Code § 17200. Accordingly, "an act can be alleged to violate any or

11  all of the three prongs of the UCL–unlawful, unfair, or fraudulent." Berryman v. Merit Prop.

12  Mgmt., Inc., 152 Cal.App. 4th 1544, 1554 (2007). Plaintiffs note that California Business &

13  Professions Code Section 17200 "borrows" violations of other laws and treats them as unlawful

14  practices independently actionable under the Unfair Competition Act. Doc. 4-1 at 6 (citing

15  Farmers Ins. Exchange v. Superior Court, 2 Cal.4th 377, 384 (1992)); Cel-Tech Cmmc'ns, Inc. v.

16  Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 180 (1999). An "unlawful" business act

17  actionable under the UCL is any business practice that is prohibited by law, whether "civil or

18  criminal, statutory or judicially made ... federal, state or local." McKell v. Washtington Mut.,

19  Inc., 142 Cal.App.4th 1457, 1474 (2006) (citations omitted).

20      Plaintiffs' complaint does not made clear what "wrongful acts and conduct" trigger UCL

21  liability. Rather, the complaint generally alleges that all of the prior conduct alleged violates the

22  UCL. See Compl. at ¶¶ 45-46. Plaintiffs motion for preliminary injunction relies exclusively on

23  the alleged PVPA violation as the predicate unlawful business act. Because Plaintiffs lack

24  standing to bring the PVPA claim they similarly cannot succeed on the UCL claim. See Bebe Au

25  Lait, LLC v. Mothers Lounge, LLC, 2014 WL 4744758, *4 (N.D. Cal. 2014).

26

27

28  [11] Plaintiffs' real complaint does not appear to be that Defendant mislabeled Sifra potatoes but that it grew and sold them at all. That claim does not lend itself cleanly to resolution through the Lanham Act.

1    Additionally, to the extent that Plaintiffs rely on the PVPA or Lanham Act violations to

2  establish the predicate unlawful conduct, Plaintiffs face preemption. A UCL claim based on

3  patent infringement is preempted by federal intellectual property law. See Summit Mach. Tool

4  Mfg. Corp. v. Victor CNC Sys., Inc., 7 F.3d 1434, 1442 (9th Cir. 1993). "Preemption analysis

5  involves determining whether the state law claim contains an element not shared by the federal

6  law ...." Id. at 1439. In Summit, the Ninth Circuit held that a UCL claim based on a competitor's

7  "pirating" of its lathe design was preempted by federal patent and copyright laws because the

8  claim did not contain an additional element beyond that of a federal patent or copyright

9  infringement claim. See id. at 1439, 1442. Thus, to the extent Plaintiffs base their UCL claim

10  solely on PVPA certificate infringement, the claim would be preempted because it is wholly

11  congruent with federal intellectual property law. See Deckers Outdoor Corp. v. J.C. Penney Co.

12  Inc., 2014 WL 4425883, *6 (C.D. Cal. 2014); Medina v. Microsoft Corp., 2014 WL 2194825, *3

13  (N.D. Cal. 2014); In re Netflix Antitrust Litigation, 506 F.Supp.2d 308, 319–20 (N.D. Cal.

14  2007). Plaintiffs cannot claim standing and are unlikely to succeed on the merits on their UCL

15  claims based solely on the alleged PVPA certificate infringement or the alleged Lanham Act

16  violations.

17  ///

18  ///

19  ///

20    **C.  Plaintiffs are Not Entitled to a Preliminary Injunction**

21    Because Plaintiffs have failed to demonstrate that they are likely to succeed on the merits the

22  Court need not address the remaining considerations for granting a preliminary injunction.

23  Plaintiffs' motion for preliminary injunction will be denied.

24        **IV. MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

25    **A.  Legal Standard**

26    A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

27  Procedure if it appears beyond doubt that a plaintiff can prove no set of facts in support of the

28  claim that would entitle her to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);

1    Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion

2    to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative

3    level, on the assumption that all allegations in the complaint are true even if doubtful in fact."

4    Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  "[T]he tenet that

5    a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a

6    cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556

7    U.S. 662, 663 (2009) (citations omitted). A complaint must contain sufficient factual matter,

8    accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.  A

9    claim has facial plausibility when the plaintiff pleads factual content that allows the court to

10   draw the reasonable inference that the defendant is liable for the alleged misconduct. Iqbal, 556

11   U.S. at 663.

12          When deciding a motion to dismiss, the Court is generally limited to reviewing the

13   complaint, and all allegations of material fact therein are taken as true and construed in the light

14   most favorable to the plaintiff. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.

15   1981). However, the Ninth Circuit allows application of "the 'incorporation by reference'

16   doctrine, which permits [the Court] to take into account documents whose contents are alleged in

17   a complaint and whose authenticity no party questions."  Knievel v. ESPN, 393 F.3d 1068, 1076

18   (9th Cir. 2005).  Additionally, under Federal Rule of Evidence 201, a court may take judicial

19   notice of matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir.

20   2001); see Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  Moreover,

21   judicial notice may be taken of a fact to show that a complaint does not state a cause of action.

22   Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd., 245 F.2d 67, 70 (9th Cir. 1956); see

23   Estate of Blue v. County of Los Angeles, 120 F.3d 982, 984 (9th Cir. 1997). Although the court

24   may not consider a memorandum in opposition to a defendant's motion to dismiss to determine

25   the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corr., 151 F.3d 1194,

26   1197 n. 1 (9th Cir.1998), it may consider allegations raised in opposition papers in deciding

27   whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n. 2 (9th Cir.

28   2003).

1    "A district court should grant leave to amend even if no request to amend the pleading

2  was made, unless it determines that the pleading could not possibly be cured by the allegation of

3  other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).  "Dismissal with prejudice

4  and without leave to amend is not appropriate unless it is clear . . . that the complaint could not

5  be saved by amendment." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.

6  2003). In other words, leave to amend need not be granted only when amendment would be

7  futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

8      **B.  Discussion**

9      In considering Defendant's motion to dismiss, this Court only looks to the complaint and

10  documents incorporated by reference therein: the Sifra Production Agreement and the Sifra

11  PVPA certificate. This Court recognizes that it has the authority to consider declarations and

12  moving papers in considering whether to grant leave to amend.

13      **1.  First Cause of Action: Plant Variety Protection Act**

14      As discussed in Section III(B)(1), *supra*, Plaintiffs the Sifra Production agreement does

15  not grant Zuckerman the exclusive right to grow or sell Sifra table stock. See Agreement at § E

16  (Zuckerman has the "first right of refusal to use or market seed of the variety…."). Without the

17  right to exclude Defendant from producing or selling Sifra, Zuckerman has suffered no

18  constitutional injury that would grant it standing. Plaintiffs have not pled any facts to suggest that

19  Bella Brands, LLC has any exclusionary rights or interest in PVPA certificate that would grant it

20  standing. Accordingly, Plaintiffs' first and second causes of action will be dismissed.

21      Fred Koops, General Manager of HZPC Americas Corp., has indicated that HZPC sent

22  letters to Bidart advising it that HZPC owns the PVPA certificate for Sifra and that Bidart may

23  not deal with Sifra without an agreement in writing from HZPC. Doc. 4-3 at ¶ 15, p. 20. The

24  second of those letters claims that "HZPC has the right, during the term of the plant variety

25  protection to exclude others from selling the variety…." Similarly, Zuckerman has alleged that it

26  has exclusive rights to enforce any PVPA violation regarding Sifra within California,

27  Washington, and Oregon. Based on the Sifra Production agreement and declarations submitted to

28  this Court, it appears that giving Zuckerman the opportunity to amend to join HZPC as a plaintiff

1   will result in both having standing to bring a claim for infringement of the rights granted by the

2   PVPA. Because joinder of an additional party to establish standing does not appear to be futile,

3   Zuckerman will be granted leave to amend in order to join HZPC as a plaintiff.

4              **2.   Third Cause of Action: Lanham Act**

5          Plaintiffs' third cause of action is based in part on the assumption that Plaintiffs have the

6   right to exclude others from marketing Sifra in California, Oregon, or Washington. For that

7   reason this claim cannot succeed. Contrary to Plaintiffs' assertion, Defendant marketing Sifra

8   (regardless of whether it is labeled as such)[12] does not imply that Zuckerman has approved of

9   Bidart's sale of Sifra. Even assuming that a trade dress or other false association claim could be

10  alleged in this case based solely on *sale* of Sifra, Defendant's sale of Sifra could only imply that

11  Zuckerman *or* HZPC has approved of the sale.

12         Further, it is unclear under which subsection of § 43(a) Plaintiff is proceeding. The Ninth

13  Circuit has held that the different causes of action in the different subsections under the Lanham

14  Act have different standing requirements. Jack Russell Terrier Network of Northern Cal. v.

15  American Kennel Club, Inc., 407 F.3d 1027, 1037 (9th Cir.2005) (citations omitted). For

16  example, for standing pursuant to the "false advertising" prong of § 43(a) of the Lanham Act, 15

17  U.S.C. § 1125(a)(1)(B), a plaintiff must show: (1) a commercial injury based upon a

18  misrepresentation about a product; and (2) that the injury is "competitive," or harmful to the

19  plaintiff's ability to compete with the defendant. Id. (citations omitted). Whereas under the "false

20  association" prong of § 43 of the Lanham Act, 15 U.S.C. § 1125(a) (1)(A), a plaintiff can satisfy

21  the standing requirement merely by alleging commercial injury based upon the deceptive use of a

22  trademark or its equivalent. Id. Although this Court attempted to infer from Plaintiffs' moving

23  papers their intent for the Lanham Act claims, this Court is restricted to the Complaint and

24  documents incorporated by reference in ruling on a motion to dismiss. Plaintiffs have not pled

25  adequate factual matter in its complaint for this Court to make a determination as to standing,

26  much less whether Plaintiffs can state a claim.

27

28
---
[12] Defendant is not alleged to have used any mark or designation to associate itself with Plaintiffs.

17

1   At minimum, in order for Plaintiffs' Lanham Act – false association – cause of action to

2   state a claim, Plaintiffs would have to allege the specific false or misleading description or

3   representation of fact by Defendant and explain how it is likely to cause confusion as to

4   affiliation, connection or association with Plaintiff. [13]

5   Similarly, in order for Plaintiffs' Lanham Act – false advertising – cause of action to state

6   a claim Plaintiffs, at minimum, would have to allege: (1) what false representation Defendant

7   made that encouraged consumers to purchase its product rather than Plaintiffs' product. See

8   TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 825 (9th Cir. 2011). From Plaintiffs'

9   complaint, it appears that Plaintiffs contend that Defendant has been able to divert sales from

10  Plaintiffs because Defendant "is selling Sifra potatoes at a substantially lower price than

11  Plaintiffs." Compl. at ¶ 26.  Plaintiff has plead nothing that would tend to indicate that Defendant

12  advertising Sifra as "white, round potatoes" or the omission of the name "Sifra" or any other

13  alleged misrepresentation (rather than simply selling Sifra at a lower price) has caused

14  consumers to purchase from Defendant rather than Plaintiff.

15  Because Plaintiffs failed to adequately plead a claim for false association or false

16  advertising under 15 U.S.C. § 1125(a), as described here and in Section III(B)(2), *supra*, their

17  claim will be dismissed. Although it is not immediately clear how Plaintiffs could cure the

18  defects in this claim due to the lack of clarity in the Complaint, the Court cannot determine that

19  amendment of this claim would be futile. Plaintiffs will be granted a single opportunity to amend

20  this cause of action.

21  **3.  Fourth Cause of Action: Unfair Competition**

22  As explained in Section III(B)(3), *supra*, to the extent that Plaintiffs' UCL claim is based

23  on a violation of the PVPA it is preempted by federal law. This Court can glean no other UCL

24

25  [13] Plaintiffs are directed to identify the specific misrepresentation contained in Defendant's advertising. Plaintiffs are further cautioned that any Lanham Act claim that sounds in fraud will be subject to the increased pleading standards of Rule 9(b). See, e.g., Architectural Mailboxes, LLC v. Epoch Design, LLC, 2011 WL 1630809, *5 (S.D. Cal.

26  2011) (collecting cases); Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp., 711 F.Supp.2d 1074, 1085 (C.D. Cal.2010); Sw. Windpower, Inc. v. Imperial Elec., Inc., 2011 WL 486089, *4 (D. Ariz. 2011) (applying Rule 9(b) to

27  plaintiff's Lanham Act claim that was "grounded in fraud" where the complaint alleged "false or misleading descriptions and representations of fact" made in "bad faith"); Pestube Sys., Inc. v. HomeTeam Pest Def., LLC,

28  2006 WL 1441014, at *4–5 (D. Ariz. 2006) (applying Rule 9(b) to plaintiff's Lanham Act claim that was "grounded" or "sounding" in fraud when the complaint alleged "knowing" misrepresentations).

violation from Plaintiffs' threadbare recitation of elements. However, due to the extreme breadth of the UCL and the lack of clear factual allegations in Plaintiffs' Complaint, this Court cannot conclude that amendment would be futile. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008) ("California's statutory unfair competition laws broadly prohibit unlawful, unfair, and fraudulent business acts.") Plaintiffs will be granted a single opportunity to amend as to this cause of action.

## V. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiffs' motion for preliminary injunction (Doc. 4) is DENIED;

2.  Defendant's motion to dismiss (Doc. 8) is GRANTED as follows:

    a.  Plaintiffs' first and second causes of action for violation of the PVPA are DISMISSED with leave to amend;

    b.  Plaintiffs' third cause of action for violation of the Lanham Act is DISMISSED with leave to amend;

    c.  Plantiffs' fourth cause of action for violation of the California Business and Professions Code Section 17200, et seq. is DISMISSED with leave to amend;

3.  Any amended complaint must be filed within 60 days of the date of this order.

IT IS SO ORDERED.

Dated:  December 17, 2014 _____
SENIOR  DISTRICT  JUDGE

19